**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| THOSE CHARACTERS FROM CLEVELAND, LLC, | |
| Plaintiff, | Civil Action No. 26-cv-2444 |
| v. | |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RENEWED *EX PARTE* APPLICATION FOR ENTRY OF AN ORDER TO SHOW CAUSE WITH A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY TRANSFER OF CONTROL OVER THE DEFENDANT INTERNET STORES, A TEMPORARY ASSET RESTRAINT, AND AN ORDER FOR EXPEDITED DISCOVERY AND SERVICE OF PROCESS BY ELECTRONIC MEANS**

Those Characters From Cleveland, LLC ("TCFC") submits this Memorandum in support of its Renewed *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, expedited discovery, service by electronic means, and an order to show cause.

i

**Table of Contents**

I.      Procedural Background ..................................................................................1

II.     Statement Of Facts........................................................................................ 1

        A.      Facts Related to Plaintiff.................................................................... 1

        B.      Defendants' Unlawful Activities ......................................................... 1

III.    Argument ..................................................................................................... 2

        A.      Standard for Temporary Restraining Order ....................................... 3

        B.      Plaintiff Will Likely Succeed on the Merits. ...................................... 4

        C.      There Is No Adequate Remedy at Law, And Plaintiff Will Suffer Irreparable
                Harm in the Absence of Preliminary Relief........................................ 16

        D.      The Balancing of Harms Tips in Plaintiff's Favor, And the Public Interest Is
                Served by Entry of the Injunction. ...................................................... 17

IV.     The Equitable Relief Sought Is Appropriate...................................................... 18

        A.      An *Ex Parte* Temporary Restraining Order Is Necessary to Combat Unique
                Circumstances of Offshore Infringement.............................................. 18

        B.      A Temporary Restraining Order Immediately Enjoining Defendants'
                Unauthorized Conduct Is Appropriate. ................................................ 20

        C.      Preventing The Fraudulent Transfer Of Assets Is Appropriate. ......................... 20

        D.      Plaintiff Is Entitled to Expedited Discovery. ...................................... 22

        E.      Service of Process by E-mail and/or Electronic Publication Is Warranted in this
                Case......................................................................................................... 23

V.      A Bond Should Secure the Injunctive Relief...................................................... 25

VI.     Conclusion ...................................................................................................... 25

## I.    Procedural Background

On March 24, 2026, Plaintiff filed this lawsuit with an e*x parte* Motion for TRO. On March 27 (Doc. 19), the Court denied the Motion without prejudice and suggesting Plaintiff refile with a more developed, specific evidentiary record, accompanied by argument addressing likelihood of confusion and the potential defenses of fair use, First Amendment and first-sale doctrine.

In advance of filing this renewed Motion for a TRO, Plaintiff filed an Amended Complaint including an Exhibit 4, which organizes the evidence in a way suggested by the Court in its Order. The Amended Complaint also adds a claim for trademark dilution under 15 U.S.C. Section 1125(c). Amended Complaint ¶¶40-43.

## II.    Statement Of Facts

### A.    Facts Related to Plaintiff

Plaintiff's intellectual property portfolio includes various registered trademarks ("CARE BEARS Marks") and creative works ("CARE BEARS Works"). Plaintiff owns, develops, markets, sells and distributes products utilizing the CARE BEARS Marks and Works and is the official source of Care Bears products. Amended Complaint ¶18. Care Bears brand features the iconic Care Bears characters, which have appeared in entertainment and consumer products and have become widely recognized by consumers. Amended Complaint ¶41. Plaintiff has invested substantial time, money, and effort in developing, advertising, and promoting the CARE BEARS Marks and Works, and consumers exclusively associate them with Plaintiff as the single source of authentic CARE BEARS products. *Id.*

### B.    Defendants' Unlawful Activities

Defendants run a sophisticated counterfeiting operation and have targeted sales to residents in the United States by setting up and operating e-commerce stores using one or more Seller

1

Aliases through which residents in the United States can purchase Infringing Products. Amended Complaint ¶¶21-27. Many of the e-commerce stores operating under the Seller Aliases share unique identifiers, indicating that their counterfeiting operations arise out of the same transaction, occurrence, or series of transactions or occurrences and establishing a logical relationship between them. Amended Complaint ¶31. However, Defendants appear to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope of their operations. *Id.*

The e-commerce platforms used by Defendants, including PayPal and Shop Pay, have verification systems that Defendants have circumvented by providing false or inaccurate identification information when registering their e-commerce stores. Amended Complaint ¶35. Despite the platforms' efforts, Defendants continue to list counterfeit products through these channels, primarily through the practice of account-hopping. Amended Complaint ¶¶37-39.

Plaintiff has identified numerous online marketplace accounts linked to fully interactive websites and marketplace listings on platforms, including the fully interactive commercial Internet stores operating under the Defendants' online marketplace accounts identified in Schedule A which is attached to the Amended Complaint (collectively, the "Seller Aliases"), which are offering for sale, selling and importing counterfeit products in connection with counterfeit versions of Plaintiff's federally registered CARE BEARS Marks and Works ("Infringing Products") to consumers in this Judicial District and throughout the United States. See Exhibit A hereto. Despite Plaintiff's enforcement efforts online, Defendants have persisted in creating the Seller Aliases.

## III.    <u>Argument</u>

Defendants' intentional and unlawful conduct is causing and will continue  to  cause irreparable  harm  to  Plaintiff's  reputation  and  goodwill in  the  CARE BEARS Marks and Works. Under Rule  65(b), the Court may issue an *ex parte* TRO where immediate and irreparable

2

injury will result before the adverse party can be heard.  Fed. R. Civ. P. 65(b).  The entry of a TRO is appropriate here because it would immediately stop Defendants from exploiting the CARE BEARS Marks and Works and preserve the *status quo* pending a hearing. As detailed in Section IV.A below, the unique circumstances of offshore e-commerce counterfeiting - including the likelihood that Defendants will transfer assets and open new stores under new aliases if given advance notice - further justify proceeding ex parte.

In the absence of a TRO without notice, the Defendants can and likely will register new e-commerce stores under new aliases and move any assets to offshore bank accounts, outside the jurisdiction of this Court, frustrating any potential recovery. Civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* TRO.

As explained in Plaintiff's original brief supporting its motion for a TRO, this Court has both personal jurisdiction over the Defendants and subject matter jurisdiction over all claims. (Brief, pp. 3-4).

A.      **Standard for Temporary Restraining Order**

A court will issue a temporary restraining order where the requesting party demonstrates the following four factors: (1) it has a substantial likelihood of success on the merits; (2) the moving party will suffer irreparable injury if the order is not granted; (3) that the threatened injury to the plaintiff outweighs the harm the relief would inflict on the non-movant; and (4) entry of the order would serve the public interest. *3M Co. v. Performance Supply, LLC*, 458 F.Supp.3d 181, 191 (S.D.N.Y. 2020).

When a party requests an *ex parte* temporary restraining order, the "Court must also determine whether '(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damages will result to the movant before the adverse

3

party can be heard in opposition,' and '(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.'" *Cengage Learning, Inc. v. Doe 1,* 2018 WL 2244461, *1 (S.D.N.Y. Jan. 17, 2018) (quoting Fed. R. Civ. P.65(b)(1)).

### B.    Plaintiff Will Likely Succeed on the Merits.

#### 1.    *Use of a Mark in a Product Description is Infringing*

At the outset, Plaintiff notes that Defendants infringe Plaintiff's trademarks not only by using them on products but also in Defendants' online product listings. Many Defendants use CARE BEAR in the *text* of their product listings, which is infringement. The Defendants that do this are listed in Exhibit B hereto.

Using CARE BEAR in the product listings is infringement because it suggests that Plaintiff is somehow affiliated with the listed product. That unauthorized use also brings consumers who search the term "Care Bears" to Defendants' product listing. This is known as initial interest confusion (in addition to being trademark infringement). *Grotrian, Helfferich, Schulz v. Steinway & Sons*, 523 F.2d 1331 (2d Cir. 1975). Initial interest confusion permits a finding of infringement when there is confusion, even if the confusion is dispelled before the purchase is made. *Id.* By embedding CARE BEARS into their commercial listings, Defendants gain the initial interest of consumers, in addition to creating a "false designation of origin" that is "likely to cause confusion, or to cause mistake, or to deceive" as to the source, affiliation, or sponsorship of the goods. 15 U.S.C. § 1114(1)(a). Courts in the Second Circuit have consistently held that using another's trademark in this way constitutes infringement. *See, e.g., Spin Master Ltd. v. Alan Yuan's Store*, 2020 U.S. Dist. LEXIS 122240, at 10-12 (S.D.N.Y. July 10, 2020)(finding infringement where defendants used plaintiff's marks in online listings to promote counterfeit goods) and *WowWee Group Ltd. v. Meirly*, 2019 U.S. Dist. LEXIS 98693, at 13-15 (S.D.N.Y. June 12, 2019) (same).

Also, Defendants' use of the CARE BEARS mark, and confusingly similar variations such as DON'T CARE BEAR and DON'T F***ING CARE, in product titles and descriptions serves no legitimate purpose other than to trade on Plaintiff's goodwill. These are "use in commerce" of Plaintiff's registered trademark -- exactly what trademark law was intended to prevent.  There is no legitimate reason for a seller to include a trademark in a product listing unless it is attempting to suggest that the goods originate from, are affiliated with, or are authorized by the trademark owner. *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171-72 (2d Cir. 2010) (use of plaintiff's mark in connection with sales of goods supports likelihood of confusion and infringement).

Therefore, Plaintiff is likely to succeed on the merits of its trademark infringement claim at least as to these Defendants.

### 2.    *Plaintiff Will Likely Succeed on Its Trademark Dilution Claim.*

The Amended Complaint adds a claim for trademark dilution. (Amended Complaint ¶¶40-44). Trademark law provides certain marks -- ones that have achieved fame -- with broader protection than other trademarks. This was enacted in the Trademark Dilution Revision Act of 2006. (15 U.S.C. § 1125(c)(Lanham Act § 43(c)). Importantly, under trademark dilution, the owner of a famous mark does not need to establish a likelihood of confusion or the existence of competition between it and the defendant. Instead of focusing on consumer confusion or competition, dilution focuses on protecting a famous mark's distinctiveness and integrity. *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105 (2d Cir. 2009)("the absence or likelihood of confusion is not determinative of trademark dilution").

Plaintiff submits that the CARE BEAR Trademarks have achieved fame. A mark achieves fame if it is "widely recognized by the general consuming public of the United States". (15 U.S.C. § 1125(c)(2)(A)). TDRA lists four non-exclusive factors courts should consider to determine fame:

5

(1) duration, extent, and geographic reach of advertising and publicity, (2) amount, volume, and geographic extent of sales, (3) extent of actual recognition of the mark and (4) federal registration status.

The first TDRA factor is "duration, extent, and geographic reach of advertising and publicity." Care Bears has engaged in continuous, nationwide advertising and promotion for decades. As alleged in the Amended Complaint, since its creation in the early 1980s, the Care Bears brand has been extensively marketed through television programming, films, licensed merchandise, and widespread retail distribution across the United States. (Amend. Compl. ¶¶8 and 15). The Care Bears characters and marks have appeared on a wide array of consumer products, including toys, apparel, and home goods, and have been promoted through Plaintiff's website, social media, and other marketing channels. *Id.*  8, 15 and 17).

The second factor is the amount, volume, and geographic extent of sales. As alleged, CARE BEARS-branded goods, including toys, apparel, and other consumer products, are marketed and sold to consumers nationwide through online platforms and retail channels, reflecting significant market penetration and consumer reach. Amend. Compl. ¶ 15 and 19.

The third factor is the extent of actual recognition of the mark. As alleged, the CARE BEARS Marks and characters are widely recognized by consumers and the public as identifying Plaintiff as the single source of authentic CARE BEARS products. Amend. Compl. ¶¶ 8 and 17. The CARE BEARS characters have achieved broad recognition through decades of exposure and use. *Id.* Their distinctive visual features, including character designs, color schemes, and signature elements, are readily identifiable to consumers. *Id.* ¶ 8. As a result of Plaintiff's substantial investment in promotion and brand development, consumers associate the CARE BEARS Marks exclusively with Plaintiff, demonstrating the level of recognition consistent with strong and widely known marks. *Id.* ¶¶ 15 and 17.

6

The fourth and final TDRA factor is federal registration status. Plaintiff owns numerous United States trademark registrations for the CARE BEARS Marks - including the CARE BEARS name, related character names, logos, and designs - many of which are valid, subsisting, and incontestable, constituting *prima facie* evidence of validity and Plaintiff's exclusive right to use the CARE BEARS Marks in commerce. (Amend. Compl. ¶¶12 and 13).

For these reasons, Plaintiff asks the Court deem the CARE BEAR Marks famous for dilution purposes.

In addition to fame, to prevail on its dilution claim Plaintiff needs to establish (1) Defendant is making commercial use of the trademark, (2) Defendants' uses are likely to tarnish distinctiveness and (3) that the uses are not exempted (*i.e.*, not fair use, news reporting, commentary or parody).

The Defendant is clearly making commercial use of the CARE BEAR Marks. Also, Defendants' use of the CARE BEARS Marks is dilutive by tarnishment, because the unauthorized association of Plaintiff's famous marks with drug use (or vulgarity) is likely to harm the reputation of CARE BEARS, a child-focused, family-friendly brand. CARE BEARS Marks and characters are longstanding symbols of friendship, caring, and positivity. (Amend. Complaint ¶8). The CARE BEARS franchise's customer base is largely children and the brand has been carefully developed and promoted to embody wholesome, family-friendly values. (Amend. Compl. ¶¶ 8, 15 and 17). Associating CARE BEARS with marijuana-related imagery and messaging creates tarnishes CARE BEARS' trademarks and goodwill -- the ***exact*** type of injury trademark dilution was created to prevent. As alleged in the Amended Complaint, Defendants' products are unauthorized, commercially motivated uses of Plaintiff's marks and works that trade on the CARE BEARS brand while undermining its carefully cultivated image. (Amend. Compl. ¶¶21-27).

Finally, the DON'T CARE BEAR Defendants cannot avoid dilution liability based on parody or fair-use defenses because the Trademark Dilution Act disallows those defenses when the defendant's use is for commerce. Under the Act, because Defendants use DON'T CARE BEAR as a source identifier for their own products, these defenses are statutorily unavailable as to Plaintiff's dilution claim. (15 U.S.C. Section 1125(c)(3)(A)). As the Supreme Court confirmed in *Jack Daniel's Properties, Inc.*, 599 U.S. 140 (2023), when a defendant uses someone else's mark as its own, the statutory parody exclusion does not apply. Accordingly, Defendants' uses -- DON'T CARE BEAR and DON'T FUCKING CARE BEAR -- fall outside the dilution statute's safe harbor. Moreover, the nature of Defendants' use, particularly the association of a well-known, family-oriented brand with marijuana-themed imagery and vulgar messaging, creates the type of negative association courts recognize as classic dilution by tarnishment. Given the direct, commercial, source-identifying use of Plaintiff's marks in Exhibit 3, and the Supreme Court's clear guidance in *Jack Daniel's*, Plaintiff has more than met that burden.

For these reasons, Plaintiff is likely to prevail on its trademark dilution claim. Plaintiff respectfully requests a TRO to prevent further damage to the CARE BEAR brands.

**3.     Plaintiff is Likely to Succeed on the Merits of its Trademark Infringement Claim**

Plaintiff is likely to prevail on the merits of its trademark infringement claim. A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Again, so that Plaintiff can focus on the issues raised by the Court, Plaintiff incorporates pages 6 - 7 of its original Brief here.

Unlike trademark dilution, with trademark infringement, fair use is judicially created, not codified. Importantly, in *Jack Daniel's Properties, Inc. v. VIP Products LLC*, the Supreme Court ruled that when a defendant uses another's mark as a designation of source for defendant's own goods, the use falls within the core of trademark law and must be evaluated under the standard likelihood-of-confusion analysis, not shielded by a threshold First Amendment test.

As noted above and shown in Exhibit 3 to the Amended Complaint, Defendants use the DON'T CARE BEAR name/words, character designs and distinctive visual elements on commercial products (*e.g.*, apparel, mugs, and accessories) as branding to attract consumers and drive sales. Defendants have built an entire brand on Plaintiff's back; DON'T CARE BEAR and the variety of cartoonish green bears are key to the products offered for sale by Defendants. Defendants are not making isolated references or expressive works that would justify First Amendment protection. Rather, they operate a full-blown commercial enterprise which leverages CARE BEARS' fame and goodwill.

There comes a point when commerciality overcomes free speech; when the primary objective is to make sales, not make a statement. When that point is crossed, it is no longer exempt from trademark law. Defendants have turned "Don't Care Bear" accompanied by a cartoonish green bear into a cottage industry. If one of these Defendants asserts parody or free speech they do so as a pretext for a full-blown business. By manufacturing and selling a product line that could occupy an entire shelf in a Times Square souvenir shop, Defendants are far from free speech and parody. This is the exact point *Jack Daniel's* makes.

Since Defendants' use is commercial, the decision proceeds to the likelihood of confusion test. As shown below, Defendants' products are highly similar to CARE BEARS. Defendants copy the distinctive bear design, color scheme, and core naming convention, which creates an immediate visual and conceptual association. The goods are marketed in overlapping consumer channels to

9

the same general audience, increasing the likelihood that consumers will believe the products are affiliated with or authorized by Plaintiff. Given the strength and recognizability of the Care Bears mark, these similarities are likely to cause confusion as to source, sponsorship, or endorsement.

Furthermore, the addition of marijuana imagery and vulgarity to what are copies of Care Bears does not reduce the likelihood of confusion. Defendants' imagery is so similar to CARE BEARS that consumers are likely to believe Defendants' products are source-connected derivatives of, or authorized by, Plaintiff. A trademark is infringed where consumers are likely to believe the **trademark owner is the source of the goods or is affiliated, sponsoring, or endorsing them**. 15 U.S.C.  1125(a)(1)(A); *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 382–85 (2d Cir. 2005); *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146–49 (2d Cir. 2003).

Regarding the parody defense to trademark infringement, it must be noted that the accused product must target or comment on the original mark itself. Defendants are not commenting on CARE BEAR -- rather they are making some type of cultural commentary. In *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing Group, Inc.*, 886 F.2d 490, 494-95 (2d Cir. 1989) the Second Circuit held -- like other circuits have -- that merely using someone else trademark to promote your message is not parody. In the parody context, *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997) is helpful. In that case Penguin sought to publish the below book, which included a farcical retelling of the OJ Simpson murder trial but in Dr. Seuss's pictorial and rhyming style. In rejecting Penguin's parody defense the court found Penguin was not commenting on Dr. Seuss. Rather, Penguin was using Dr. Suess' branding to comment on the OJ Simpson saga. *Id.* at 1401.



Just like Penguin was not commenting on Dr. Seuss, Defendants are not commenting on CARE BEARS. Rather, Defendants are using CARE BEAR'S styling to comment on marijuana culture or policies. What the Ninth Circuit said about Penguin equally applies to these Defendants: they are all "avoiding the drudgery in working up something fresh" by using something well-known. (*Penguin* at 1405).



*Louis Vuitton Malletier S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425 (S.D.N.Y. 2016), aff'd, 868 F.3d 172 (2d Cir. 2017), helps explain where courts draw the line between parody and stealing. There, the defendant sold an inexpensive carrying bag with the words "My Other Bag" on one side and a cartoonish copy of the plaintiff's high-end purse on the other. *Id.* at 430. The Second Circuit found that the defendant *was* commenting on the plaintiff's brand, specifically, about the price of its products, which the court ruled was a parody. *Id.* at 430. In other words, this defendant's comments were about Louis Vuitton, rather than defendant using Louis Vuitton style to comment on something else.

 

Because Defendants used CARE BEARS to get a leg-up and a free-ride in selling their products, rather than to comment on CARE BEARS, a parody defense would fail to defeat Plaintiff's trademark infringement claim.

### 3.    *Plaintiff Will Likely Succeed on Its Copyright Infringement Claim.*

To establish copyright infringement, the two elements that must be proven are (1) ownership of a valid copyright, and (2) copying of constituent elements of a work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 342 (1991). This is discussed in Plaintiff's original Brief, (Doc. 9 at Page 5). For judicial economy, Plaintiff incorporates that portion into this Brief and focuses on the issues raised by the Court in its Order.

The copyright fair use defense is codified in the Copyright Act at Section 107. That Section states that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching . . . scholarship, or research, is not an infringement of copyright." The Section gives four factors to be considered: (1) the purpose and character of the use, (2) the nature of the copyrighted work, (3) the amount and substantiality used, and (4) the effect of the use on the market.

Fair use in copyright infringement cases are also helpful. In *Rogers v. Koon*, 960 F.2d 301

13

(2d Cir. 1992), the plaintiff took a photo (below) of a couple holding puppies. (*Id.* at 302). The defendant, an artist, made a sculpture that closely copied the photo. *(Id.)*. In defending the infringement claim, the defendant argued his sculpture was a parody. *(Id.)*. The Second Circuit rejected the parody and fair use defenses, saying the sculpture did not target the plaintiff's photo. (*Id.* at 307). Rather, the sculpture was either a copy of the photograph or a comment on something unrelated. (*Id.*).



All four of the statutory fair use factors weigh against Defendants. First, the purpose and character of the use is plainly commercial, as Defendants use Plaintiff's copyrighted works to market and sell goods. Second, the CARE BEARS works are highly creative and thus entitled to strong protection. Third, Defendants have taken the heart of Plaintiff's works by copying core character elements that make the CARE BEARS immediately recognizable. Fourth, Defendants' conduct harms both the actual and potential market for authorized CARE BEARS products by substituting unauthorized goods in the same channels of trade. At the TRO stage, Plaintiff need only show a likelihood of success, and the record demonstrates that Defendants' uses are non-transformative, commercial appropriations of protected expression - not protected parody. Accordingly, Plaintiff has established a strong likelihood of success on its copyright infringement claim.

Therefore, parody is not a defense to this copyright infringement claim.

14

### 4.    *First Amendment Defense Is Not Viable Here*

The Court asks Plaintiff to address whether Defendants' products are shielded from liability for copyright and trademark infringement based on the First Amendment. (Order, p. _____).

In *Rogers v. Grimaldi*, 695 F.Supp. 112 (S.D.N.Y. 1988), the defendant made a film titled "Ginger and Fred." Ginger Rogers, the famous dancer known for partnering with Fred Astaire, sued for trademark infringement over use of her name. The Second Circuit found that the First Amendment shielded the defendant from liability for trademark infringement because the defendant's created an expressive work - a film. The court reasoned that the use of Rogers's name had artistic relevance to the film's content and was not misleading as to source or endorsement, thereby falling within First Amendment protection. (*Grimaldi* at 117). What these Defendants have done is not creative, not a film, not an expressive work. Instead, they doctored Plaintiff's intellectual property, put those images on a suite of ordinary household products and peddle them online.

The First Amendment also does not apply because CARE BEARS Marks or Works were not necessary to convey their pro-marijuana message. Defendants could have conveyed that message without taking Plaintiff's distinctive character and trade dress. Defendants used CARE BEARS' intellectual property as a shortcut to goodwill, rather than for genuine expressive or artistic purposes.

### 5.    *First Sale Doctrine*

The Court states that some of the products in Plaintiff's evidence, which is Exhibit 3 to the Amended Complaint, might originate from Plaintiff, meaning Defendants could raise the first sale doctrine as a defense. Order, p. 2, Doc. 19. Plaintiff has repeatedly reviewed its evidence and none of the products shown are authorized; none originate from Plaintiff. *See* Declaration of Sean

15

Gorman ("Gorman Decl.") ¶¶2, 14 and 16-21. This is not a case involving gray goods -- none of the products Defendants sell are authorized by Plaintiff in the United States or outside the United States. Therefore, Plaintiff doubts any Defendant will assert the first sale doctrine as a defense.

**C.      There Is No Adequate Remedy at Law, And Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief.**

Because Plaintiff has shown a likelihood of success on the merits, Plaintiff is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). Even without the presumption of irreparable harm, however, Plaintiff can easily satisfy this factor. Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. *Kipling Apparel Corp. v. Boading Baigou Xincheng Younuo Trading Co.*, No. 1:18-cv-08333-ALC, 2019 U.S. Dist. LEXIS 234292, at \*9 (S.D.N.Y. June 20, 2019). It is well-settled that a trademark owner's loss of goodwill and ability to control its reputation constitutes irreparable harm sufficient to satisfy the preliminary injunction standard. *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F.Supp.2d 305, 325 (S.D.N.Y. 2010); *see also*, 17 U.S.C. §§502, 503 (providing for injunctive relief for copyright infringement; enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed).

Defendants' unauthorized use of the CARE BEARS Marks and Works has caused and continues to cause irreparable harm to Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *NYP Holdings v N.Y. Post Publ'g Inc.*, 63 F.Supp.3d 328, 341-42 (S.D.N.Y. 2014).

Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Cengagdece Learning*, 2018 WL 2244461 at *3 ("where Plaintiff seeks both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets") (internal quotations and citations omitted); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). Additionally, without a restraint of assets, Defendants will have little to no incentive to participate in these proceedings, as they can simply transfer out their ill-gotten gains, close their Seller Aliases and quickly open new stores selling Infringing Products under different names, thereby continuing their infringing activities and causing ongoing harm to Plaintiff.

**D.    The Balancing of Harms Tips in Plaintiff's Favor, And the Public Interest Is Served by Entry of the Injunction.**

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next determine whether the balance of the hardships between the plaintiff and defendants, if an injunction is issued, tips in the plaintiff's favor. *Cengage Learning*, 2018 WL 2244461, at *1. "It would not be a 'hardship' for Defendant to refrain from engaging in unlawful activities related to [the Plaintiff's] brand." *3M Co.,* 458 F.Supp.3d at 197; *WpIX, Inc. v. lvl, Inc.,* 691 F.3d 275, 287 (2nd Cir. 2012) ("an […] infringer cannot complain about the loss of ability to offer its infringing product"). Thus, "[w]hen considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner."

17

*Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the Plaintiffs' trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996); *Estee Lauder, Inc. v. Watsky*, 323 F.Supp. 1064, 1068 (S.D.N.Y. 1970) ("To the plaintiff its name is at stake, and continued injury to its reputation and goodwill would be a far more serious blow to it than the curtailment of the sale by the defendants would be to them.").

 As Plaintiff has demonstrated, Defendants have been profiting from the sale of Infringing Products. Thus, the balance of equities tips decisively in Plaintiff's favor.

## IV.    The Equitable Relief Sought Is Appropriate

The Copyright Act authorizes courts to issue injunctive relief "on such terms as [they] may deem reasonable to prevent or restrain infringement of a copyright . . ." 17 U.S.C. § 502. Additionally, the Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark . . ." 15 U.S.C. § 1116(a).

### A.    An *Ex Parte* Temporary Restraining Order Is Necessary to Combat Unique Circumstances of Offshore Infringement.

The Court may grant an *ex parte* seizure order if providing notice to the Defendants would render fruitless the further prosecution of the action. *In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir.1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

18

An *ex parte* TRO is necessary and justified in this case given the unique circumstances of offshore e-commerce counterfeiting. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See, e.g., Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*, 2021 WL 1249631, *2 (S.D.N.Y. Apr. 5, 2021) ("If Defendants are given notice of Plaintiff's application, they are likely to hide, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of counterfeit and infringing products."); *Lindsey Adelman Studio, LLC v. ZORA Lighting Co., Ltd.*, 2019 WL 7599931, *2 (S.D.N.Y. May 29, 2019) ("Defendants may easily and quickly transfer the registrations of their internet domain name, or modify registration data and content, change hosts, and redirect traffic to other websites, thereby thwarting Plaintiff's ability to obtain meaningful relief."). As such, Plaintiff respectfully requests that this Court issue the requested ex parte temporary restraining order.

Here, each Defendant is engaged in the inherently deceptive act of intellectual property infringement from outside the U.S. *Gucci Am., Inc. v. Weixing Li,* 768 F.3d 122, 132-33 (2d Cir. 2014) (confirming authority to issue a TRO and preliminary injunction freezing assets of offshore defendants selling counterfeit goods online); *Animale Grp. Inc.* 256 F. App'x 707, 709 (affirming TRO and preliminary injunction freezing assets of defendants selling counterfeit goods); *Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*, 737 F. Supp. 1521, 1527 (S.D. Cal. 1990) ("Due to the international aspect of the defendants' business, the Court is concerned that unless the assets are frozen, defendants may hide their allegedly ill-gotten funds."), aff'd, 970 F.2d 552 (9th Cir. 1992).

Plaintiff has submitted evidence showing that Defendants are selling Infringing Products and operate from China or other foreign jurisdictions. Gorman Decl. ¶27, Amended Complaint ¶¶21-26 and Exhibit 3. Defendants "take advantage of a set of circumstances – the anonymity and mass reach afforded by the internet and the cover afforded by international borders – to violate

[Plaintiff's] trademarks with impunity." *Bose Corp. v. P'ships, et al.*, 334 F.R.D. 511, 516 (N.D. Ill. 2020). Specifically, Plaintiff has established that Defendants operate offshore in foreign jurisdictions. (Amended Complaint ¶20). Defendants are also likely aware that it would be "difficult if not impossible to enforce U.S. judgments in China." *Cisco Sys.*, 2020 U.S. Dist. LEXIS 158008 at *25; *See* Declaration of Shengmao Mu ("Mu Decl.") at ¶ 7.

### B.     A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized Conduct Is Appropriate.

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all unauthorized use of the CARE BEARS Marks and Works, or substantially similar or confusingly similar intellectual property, on or in connection with all e-commerce stores operating under the Seller Aliases. Courts in this district have regularly authorized injunctive relief in similar cases involving counterfeiting. *See, e.g., Fox Shiver, LLC v. Individuals*, No. 23-CV-1898, 2023 U.S. Dist. LEXIS 118387 (S.D.N.Y. Apr. 25, 2023).

### C.     Preventing The Fraudulent Transfer Of Assets Is Appropriate.

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Infringing Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. Defendants can easily remove all evidence of their counterfeit goods from their virtual storefronts and transfer any ill-gotten funds into foreign bank accounts, where they are beyond this Court's reach. *Pandaloon LLC v. Hefei Longnew Pet Prods. Co., Ltd.*, 2025 LX 506956, at *9 (S.D.N.Y. Dec. 13, 2025). If an asset restraint is not granted, Defendants will likely disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Based on its investigation, Plaintiff has reason to believe that Defendants in this case may hold substantial assets in offshore accounts, as suggested by their ongoing commercial activities and sales volumes.

20

Without an asset restraint, Defendants could potentially hide or dispose of assets, which would render an accounting by Plaintiff meaningless and frustrate the Court's ability to provide effective relief.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Cengage Learning*, 2018 WL 2244461 at *3 ("where Plaintiff seeks both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets") (internal quotations and citations omitted); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Plaintiff is entitled, "subject to the principles of equity, to recover ... defendant's profits." The Amended Complaint seeks, among other reliefs, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. *See Klipsch Grp., Inc. v. Big Box Store Ltd.*, 2012 WL 4901407, *2 (S.D.N.Y. Oct. 11, 2012) ("Courts in this district have exercised their equitable authority powers in Lanham Act cases to restrain assets to preserve the return of profits derived from the sale of counterfeit goods and to insure counterfeiting [p]laintiffs the accounting to which they are entitled.") (collecting cases). Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff.

Courts in this District have exercised this authority in analogous cases. See *Gucci* Am., *Inc. v. Weixing Li*, 2011 WL 6156936, at *3-4 (S.D.N.Y. Aug. 23, 2011), aff'd in relevant part, 768 F.3d 122 (2d Cir. 2014) (freezing assets of Chinese website operators selling counterfeit handbags where plaintiff sought an equitable accounting of profits); *see also Animale Grp. Inc.*,

21

256 F. App'x at 709; *Levi Strauss &amp; Co. v. Sunrise Int'l Trading Inc*., 51 F.3d 982, 987 (11th Cir. 1995); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question . . . were the profits of the [defendants] made by unlawfully stealing [the plaintiff's] services, the freeze was appropriate").

Plaintiff has demonstrated a strong likelihood of success on the merits, substantial and ongoing irreparable harm suffered as a direct result of Defendants' infringing activities, and compelling evidence that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts, as demonstrated by their pattern of evasive behavior. Accordingly, an immediate asset restraint is necessary and proper.

### D.      Plaintiff Is Entitled to Expedited Discovery.

"A party may seek expedited discovery before the Federal Rules of Civil Procedure Rule 26 (f) conference when authorized by a court order." *Next Phase Distrib., Inc. v. John Does 1-27*, 284 F.R.D. 165, 171 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 26(d)(1)). "Courts in this District use a flexible standard of reasonableness and good cause when considering whether to grant an order." *Cengage Learning*, 2018 WL 2244461 at *4 (citing *Next Phase Distrib*., 284 F.R.D. at 171). Courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Plaintiff requests expedited discovery to identify the true names, contact information, and financial accounts Defendants use for their operations. The expedited discovery requested is narrowly tailored and limited to: (1) information necessary to identify Defendants and serve them with process; (2) financial account information necessary to effectuate the requested asset restraint; and (3) information regarding the scope of Defendants' infringing activities to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained and that Plaintiff can obtain meaningful relief through

an accounting of profits and prevention of further unauthorized transfers. Plaintiff's asset restraint may have little meaningful effect without corresponding expedited discovery.

**E.      Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case.**

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests authorization to serve process by e-mail and by electronically publishing a link to Amended Complaint, any Temporary Restraining Order, and other relevant documents on a website to which the Defendant Seller Aliases will be transferred (the "Link"). Plaintiff submits that providing notice via electronic publication and e-mail, along with any notice that Defendants receive from the online marketplace providers and payment processors, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections. More specifically, Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in Rio Properties held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id*.

1.    <u>The Hague Convention Does Not Apply Because the China-Based Defendants' Addresses are Unknown</u>

The United States and the People's Republic of China are both signatories to the Hague Service Convention. Declaration of Shengmao Mu (hereinafter, "Mu"). While the Second Circuit has ruled that Hague Service Convention prohibits email service on China-based Defendants, *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 166 (2d Cir. 2025), Article 1 of the Hague Service Convention states that the Convention does not apply if the address of the

person to be served is unknown. *See* HAGUE CONVENTION ON THE SERVICE ABROAD OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS IN CIVIL OR COMMERCIAL MATTERS, Art. 1; *see also Kelly Toys Holdings, LLC v. Top Dep't Store,* No. 22 CIV. 558 (PAE), 2022 WL 3701216, at *9 (S.D.N.Y. Aug. 26, 2022); *see also Chanel, Inc. v. Zhixian*, No. 10-CV-60585, 2010 WL 1740695, at *3 (S.D. Fla. April 29, 2010); *BP Products North America, Inc. v. Dagra*, 236 F.R.D. 270, 271 (E.D. Va. 2006); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004). Courts in this Circuit and in others have concluded that an address is unknow "if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so." *Foxmind Canada Enters. Ltd. v. Aproat,* No. 25-cv-5837 (JSR), 2026 LX 48445, at *7 (S.D.N.Y. Feb. 13, 2026) citing *TushBaby, Inc. v. Jinjang Kangbersi Trade Co. Ltd.*, No. 24-CV-6150 (JMF), 2025 U.S. Dist. LEXIS 18027, 2025 WL 358409, at *1 (S.D.N.Y. Jan. 31, 2025). Courts have also found that when, for example, "the plaintiff searched websites associated with the defendant's domain names, completed internet searches, and attempted to visit the defendant's domicile in person." *Id.* at *7. "No specific set of steps, however, are mandatory." *Id*. at *7-8.

Plaintiff attempted to locate the Defendants based upon the information provided on Defendants' websites. *See* Mu Decl. ¶ 12, Exhibit 1. As part of that process, Plaintiff utilized both Google Map and Baidu Map to attempt to locate and verify the addresses. Plaintiff's investigator found that few, if any, Defendants provided a complete and accurate physical address on the e-commerce store. *See id*. Moreover, the complete addresses that were provided were not located in an area where any businesses potentially linked to the Defendants could be located. *See id*. None of the addresses provided by Defendants returned a result consistent with a Defendant operating a business at that address. *See id*.

24

## V.    A Bond Should Secure the Injunctive Relief

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). The Court directed Plaintiff to include detail as to the estimated dollar volume of merchandise to be enjoined, for the Court to consider when setting a bond amount. Plaintiff does not have this information yet. Plaintiff normally receives this from the online marketplace once a TRO is in place. In the meantime, Plaintiff suggests a bond amount of $1,500.00 which is consistent with comparable cases with this number of defendants and these types of products. Once a TRO issues and Plaintiff receives information about what the marketplaces restrained, Plaintiff can file a supplement with that information.

## VI.    Conclusion

In view of the foregoing, the clear evidence of ongoing infringement, and consistent with well-established precedent in similar cases, Plaintiff respectfully requests that the Court enter a Temporary Restraining Order, including a temporary injunction, a temporary asset restraint, expedited discovery, and an order to show cause, in the form submitted herewith.

Dated: April 15, 2026                                   Respectfully submitted,

*/s/ Shengmao Mu*
Shengmao Mu
NY No. 5707021
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (917) 858-8018
Email: smu@whitewoodlaw.com

*Counsel for Plaintiff*

25